UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TODD BRIGLIN,

                                                              Plaintiff,

                                                 v.

BROOKS T. BAKER, ESQ., DA, et al.,

                                                 Defendants.
_____

<u>DECISION AND ORDER</u>

15-CV-6162L

       Plaintiff, Todd Briglin, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. At the time he filed the complaint in March 2015, plaintiff was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Plaintiff filed an amended complaint (Dkt. #9) on November 9, 2015. It appears from the DOCCS Inmate Lookup Service, http://nysdoccslookup.doccs.ny.gov/, that plaintiff was released from custody in May 2016.

       Plaintiff has sued several defendants, as described in more detail below, but in general they are associated either with Steuben County ("County defendants") or New York State ("State defendants"). Plaintiff alleges that defendants violated his federal constitutional rights in a number of respects, arising out of his criminal prosecution, conviction, and subsequent incarceration. Both the County and State defendants have moved to dismiss plaintiff's claims

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has not responded to the motions.[1]

**BACKGROUND**

While plaintiff's allegations in the amended complaint (Dkt. #9) are prolix and somewhat convoluted, they may fairly be summarized as follows. In May 2012, plaintiff was arrested in connection with an alleged burglary and illegal sale of firearms. During the ensuing prosecution, he entered into a cooperation agreement, with the understanding that in exchange for his cooperation, some charges would later be dropped, and that he would receive some leniency if he were convicted and sentenced on the remaining charges.

Plaintiff alleges that as part of his cooperation, he provided investigators with information concerning certain other individuals. He alleges that he was assured by investigators from the Steuben County Sheriff's Office and the New York State Police that the fact of his cooperation would be kept confidential.

Based partly on the information provided by plaintiff, several other people were eventually charged and convicted of certain crimes. Plaintiff alleges, however, that word of his cooperation was leaked to the news media, and thereby made known to those individuals.

Plaintiff ultimately pleaded guilty to several charges, in January 2013, as part of a plea deal. Apparently some other charges were dismissed, as promised. He alleges that he once again received assurances from defendants, this time that he would not be placed in the same facility as

---

[1] Unlike on a motion for summary judgment, a plaintiff's failure to respond to a motion to dismiss does not relieve the Court of its obligation to consider the merits of plaintiff's claims. *See McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000); *Crenshaw v. Dondrea*, 278 F.Supp.3d 667, 669 (W.D.N.Y. 2017).

2

his codefendants, *i.e.*, the persons about whom he had provided information, and that he would be kept safe from them.

Following his conviction, plaintiff was incarcerated at Livingston Correctional Facility ("Livingston"). He states that upon arrival, he was interviewed by Sergeant Macready, and that based on established intake procedures, plaintiff gave Macready a list of people in the prison system who might pose a threat to plaintiff, in other words, his "enemies."

After his arrival, however, plaintiff learned that Robert Mills was also an inmate there. Mills was one of the individuals about whom plaintiff had made statements to investigators, and he was one of the persons whom plaintiff identified to Macready as a potential enemy.

Plaintiff alleges that after he learned that Mills was also an inmate at Livingston, he informed his mother in a telephone conversation about his concerns, and she contacted Assistant Public Defender Philip Roche, who had been assigned to represent plaintiff during his criminal prosecution. Roche allegedly told plaintiff's mother that he would take steps to address plaintiff's concerns.

According to plaintiff, on July 17, 2013, while he was working in the maintenance department, he was warned by a fellow inmate that someone planned to attack him for being a "rat." Plaintiff alleges that he then went to see his job supervisor, Gregory Brewer, and told him about the impending assault. Brewer said that he would inform a sergeant.

About an hour and a half later, plaintiff was assaulted in the mess hall. Plaintiff states that he was sitting at a table when an inmate (whom plaintiff does not identify) walked up and struck plaintiff in the back of the head, repeatedly. Plaintiff alleges that there were about seven

3

correction officers nearby, but they did nothing to intervene. Eventually plaintiff was able to get to his feet, whereupon he was escorted out by an officer.

Plaintiff was then taken to the medical building, where he was seen by a nurse. He alleges that he received no medication or other treatment at that time.

Plaintiff's symptoms worsened, however, to the point where he had two large swellings on his head. Almost a month after the assault, he was taken to see Dr. Marcia Fries, a staff physician at Livingston. She sent him for a consult with an ophthalmologist and a neurologist. Both prescribed certain treatment, but plaintiff alleges that he has continued to have problems with his right eye, and daily headaches.

In October 2014, plaintiff was transferred to Hale Creek Correctional Facility. There he was seen by Dr. McPhillips. McPhillips prescribed propranolol, but due to the negative side effects, plaintiff was taken off that medication and given ibuprofen instead.

In his amended complaint, plaintiff has asserted six causes of action, which will be described in more detail below. The current named defendants are the County defendants–Steuben County District Attorney Brooks Baker, Assistant Public Defender Philip Roche, and Steuben County Sheriff's Office Investigators Eric Tyner and Donald Lewis–and the State defendants: State Police Investigators Eric Hurd and John Karasiewicz; Livingston Superintendent Michelle Artus; Livingston Deputy Superintendent for Security ("D.S.S.") Gregory Saj; Maintenance Supervisor Gregory Brewer; Sergeant Macready; and doctors Fries and Phillips. Plaintiff has also asserted claims against several "John Doe" defendants, who are officers that were allegedly present, but failed to intervene, when plaintiff was assaulted. Those

4

defendants have not been identified or served. Plaintiff seeks compensatory and punitive damages in an unspecified amount.

## DISCUSSION

### I. Claims Against the County Defendants

Plaintiff's claims against the County defendants must be dismissed, for a variety of reasons.

First, plaintiff's claim against Roche (in the second cause of action, which alleges several constitutional violations) must be dismissed. "Section 1983 establishes a private right of action for money damages against state officials, acting 'under color' of law, who violate a constitutional or statutory right." *Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018) (quoting 42 U.S.C. § 1983). But as the Second Circuit has made clear, "public defenders or court-appointed defense attorneys do not act 'under color of law.'" *Housand v. Heiman*, 594 F.2d 923, 924-25 (2d Cir. 1979). There is thus no basis for a § 1983 claim against Roche.

The claims against defendant Baker (who is named in the first and second causes of action) must also be dismissed. Plaintiff's claims against Baker in these two counts are to a great extent duplicative of each other, but the gist of them is that Baker assured plaintiff that if plaintiff agreed to cooperate, his confidentiality would be protected, and he would not have to worry about being placed in the same facility as any of the individuals named by plaintiff.

Baker is immune from liability, however. Prosecutors are entitled to absolute immunity when they engage in activities "intimately associated with the judicial phase of the criminal process," *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), and done "in the course of [their] role

5

as ... advocate[s] for the State," *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

"Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate." *O'Neal v. Morales*, 679 Fed.Appx. 16, 18 (2d Cir. 2017) (quoting *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995)).

The Second Circuit has held that plea bargaining is a prosecutorial function that confers absolute immunity. *See Kent v. Cardone*, 404 Fed.Appx. 540, 542-43 (2d Cir. 2011) (citing *Taylor v. Kavanaugh*, 640 F.2d 450, 453 (1981)). Baker's alleged assurances to plaintiff about the confidentiality of his cooperation were made in the context of plea bargaining negotiations. Thus, he is absolutely immune from liability with regard to those statements.

Even if Baker's alleged assurances we viewed as investigative, rather than prosecutorial, Baker would still be entitled to dismissal of plaintiff's claims against him on the basis of qualified immunity. *See O'Neal v. Morales*, 679 Fed.Appx. 16, 17 (2d Cir. 2017) (only qualified immunity attaches when a prosecutor performs "investigative" functions) (citing *Buckley*, 509 U.S. 259).

"Qualified immunity shields public officials from an action for civil damages, to the extent that their challenged acts do not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ivery v. Baldauf*, 284 F.Supp.3d 426, 442 (W.D.N.Y. 2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[Q]ualified immunity is an immunity from suit rather than a mere defense to liability ... ." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). *Accord Bryant v. Egan*, 890 F.3d 382, 386 (2d Cir. 2018).

On a motion to dismiss, the qualified immunity defense may be established if it is "based on facts appearing on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

There is no clearly established right that could have been violated here, and Baker is therefore entitled, at the least, to qualified immunity. For one thing, a state's failure to protect an individual from private violence does not amount to a due process violation. *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 195 (1989); *Sanchez v. City of New York*, __ Fed.Appx. __, 2018 WL 2670561, at *2 (2d Cir. June 5, 2018).[2]

The Second Circuit has recognized two exceptions to that general rule, however. Specifically, a state "may owe a constitutional obligation to the victim of private violence" if (1) there is a "special relationship" between the state and the individual; or (2) the state has created the danger. *See Matican v. City of N.Y.*, 524 F.3d 151, 155 (2d Cir. 2008). In addition to showing that one of these exceptions applies, the plaintiff must also show that the defendant's conduct was "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). Neither exception applies here.

In a factually similar case, the district court in *Johnson v. City of New York*, No. 00CIV.3626, 2000 WL 1335865 (S.D.N.Y. Sept. 15, 2000), held that a prosecutor's alleged promise to protect an inmate who agreed to testify against his codefendants did not create a

---

[2]Although plaintiff cites several other constitutional rights in his claims against Baker, they are self-evidently inapplicable. Since there was no search or seizure here, the Fourth Amendment does not apply. *See Briggs v. County of Monroe*, 293 F.Supp.3d 379, 386 (W.D.N.Y. 2018). And since there is no indication from the complaint that Baker had any control over plaintiff's conditions of confinement, there is no basis for an Eighth Amendment claim against Baker. *See Reimann v. Hanley*, No. 16 C 50175, 2016 WL 5792679, at *6 (N.D.Ill. Oct. 4, 2016) (plaintiff's claim against prosecutors, arising out of their alleged revealing of his identity as an informant, was in the nature of a due process claim, not an Eighth Amendment claim, since "the police and prosecutors named in plaintiff's complaint were not his jailers") (citing *Coyne v. Cronin*, 386 F.3d 280, 286-87 (1st Cir. 2004)).

7

special relationship giving rise to a constitutional right to protection from those codefendants. As to the "special relationship" exception, the court noted that the Second Circuit has "considered and rejected claims against prosecutors for failure to protect a witness from attack by a third party." 2000 WL 1335865, at *4 (citing *Barbera v. Smith*, 836 F.2d 96, 100-01 (2d Cir. 1987); *Ying Ging Gan v. City of New York*, 996 F.2d 522, 533-34 (2d Cir. 1993)). The court added that it was "aware of [no case] where it has been held that a prosecutor's alleged promise to protect an inmate who agrees to testify creates a special relationship that gives rise to a constitutional right to protection from a third party." *Id.*

The relevant law in this circuit has not changed since *Johnson* was decided. *See Delrosario v. City of New York*, No. 07 Civ. 2027, 2010 WL 882990, at *12 (S.D.N.Y. Mar. 4, 2010) (stating that the "special relationship that exists between prison officials and inmates ... has not been extended to reach other state actors"); *Newman v. Gonzalez*, 05 Civ. 5215, 2007 WL 674698, *2 (E.D.N.Y. Mar. 5, 2007) (*Barbera* "held that a prosecutor was entitled to qualified immunity because there was no clearly established duty to protect the witness at the time of his death. No right has since been established") (internal citations omitted).

There is also no basis to apply the "state-created danger" exception. That "exception does not apply ... where [state] actors took no affirmative action to encourage or assist the private citizen" who injured the plaintiff. *Sanchez*, __ Fed.Appx. at __, 2018 WL 2670561, at *2. There are no facts alleged here that would support such a finding with respect to Baker.

Furthermore, the attack here occurred over a year after plaintiff entered into the cooperation agreement, and after he had been convicted and sent to prison. His conviction and incarceration effectively ended Baker's involvement in the case. *See Delrosario*, 2010 WL

8

882990, at *12 ("Plaintiff has cited no authority, and this Court can find none, that requires prosecutors to step into the shoes of prison officials and safeguard prisoners"). Thus, any link between Baker's alleged actions and the assault is simply too attenuated to state a plausible claim against Baker.

Among the County defendants, that leaves Investigators Tyner and Lewis. Plaintiff alleges that they participated in the discussions leading up to plaintiff's agreement to cooperate.

I find as a matter of law that Tyner and Lewis are entitled to qualified immunity, for the same reasons stated with respect to Baker. Again, my finding that Baker is entitled to qualified immunity was premised on the assumption, for the sake of argument, that Baker was acting in an investigatory rather than a prosecutorial role. *A fortiori*, Tyner and Lewis are also entitled to immunity, since they were unquestionably acting as investigators. Accepting the truth of plaintiff's allegations in the complaint, their involvement was no greater than Baker's. Since, as explained above, their actions did not violate any clearly established rights of which a reasonable person would have known, they are immune from suit.

Aside from the flaws in plaintiff's claims against the particular County defendants, his claims against them fail in a broader substantive sense. Plaintiff's conspiracy claims must be dismissed, as he has alleged no more than vague, conclusory assertions, unsupported by factual allegations. "It is well settled that claims of conspiracy 'containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (citation omitted).

Plaintiff's claim of malicious prosecution fails for the obvious reason that plaintiff was convicted of the charges against him. "In the context of § 1983 malicious prosecution cases, ...

as in state malicious prosecution cases, the tort cannot stand unless the underlying criminal cases 'finally end[ ] in failure.'" *Poventud v. City of New York*, 750 F.3d 121, 131 (2d Cir. 2014) (quoting *DiBlasio v. City of New York*, 102 F.3d 654, 657 (2d Cir. 1996)) (en banc); *see also DiBlasio*, 102 F.3d at 656-57 (affirming dismissal of § 1983 malicious prosecution cause of action for failure to state a claim, because plaintiff did not allege that the criminal proceeding against him terminated in his favor).

To the extent that plaintiff's complaint can be read as implying the invalidity of his conviction, such claims are barred by *Heck v. Humphrey*, 512 U.S. 447 (1994). In *Heck*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed." *Id.* at 487.

Although plaintiff does expressly request that his conviction be overturned, he does allege that Baker failed to live up to promises that plaintiff would not be charged with certain crimes, that on at least one occasion he was interviewed without the benefit of counsel, and that the purported factual basis for the charges against him was inaccurate. *See* Amended Complaint ¶¶ 7, 8, 11. Arguably, then, his complaint could be read as implying the invalidity of his conviction. As explained, though, under *Heck*, any claims based on some alleged invalidity of plaintiff's conviction must be dismissed.

**II. Claims Against the State Defendants**

As stated, plaintiff has sued eight named State defendants, as well as several unnamed "John Doe" defendants.

10

Two of the state defendants, Hurd and Karasiewicz, are New York State Police investigators. Their involvement in the underlying events was largely the same, in all material respects, as Tyner's and Lewis's. *See* Amended Complaint ¶¶ 6-23. The only distinction among them of note is that plaintiff alleges that on one occasion, when plaintiff was in Investigator Lewis's office at the Steuben County Jail, Karasiewicz told him "that he was sorry that [plaintiff's] name was in the paper and that he could not keep his promise [of confidentiality] as the people above him made the call." Amended Complaint ¶ 9.

For the reasons stated with respect to Tyner and Lewis, the Court finds that the claims against Hurd and Karasiewicz must be dismissed. As stated above, even assuming the truth of plaintiff's factual allegations, the investigators, county or state, did not violate any clearly established rights of which a reasonable person would have known. *DeShaney*, 489 U.S. at 195; *Johnson*, 2000 WL 1335865, at *4. Karasiewicz's alleged statement that he was "sorry" about plaintiff's name being in the paper does not indicate any wrongdoing on his part, and does not alter the fact that he did not violate any of plaintiff's constitutional rights, much less any clearly established rights.

Sergeant Macready is named in the third, fourth and fifth claims. In the third claim, plaintiff alleges that he gave Macready a list of his enemies in the prison system, including Robert Mills, and that although Macready took down the names, he apparently failed to ensure that the information was entered in plaintiff's file. Plaintiff alleges that "this error of judgment" on Macready's part put plaintiff in danger of assault. Amended Complaint ¶ 27.

In the fourth claim, plaintiff alleges the facts surrounding his assault by another inmate. The only mention of Macready in this claim is that "[t]he fault [on defendants' part] also reverts

back to claim three against Sargent [sic] Macready for not placing anyone on my enemy list or turning in the proper paper work." *Id.* ¶ 36. The fifth claim relates several other matters involving plaintiff's interactions with, and fear of Robert Mills, but does not allege any particular facts concerning Macready. Thus, this claim too seems to "revert[] back to claim three."

The claims against Macready fail for the simple reason that plaintiff has not alleged facts plausibly showing that any of Macready's acts or omissions were a proximate cause of the later assault. Plaintiff does not allege that the inmate who assaulted him was one of the persons that he named among his "enemies." In fact, plaintiff does not even name the inmate. He simply describes the inmate as his "attacker." Amended Complaint ¶ 31. He alleges that he eventually was informed that the assault was carried out by or on behalf of a certain prison gang, because plaintiff had "ratted out" Robert Mills, who was a member of the gang. *Id.* ¶ 33.[3] Even if Macready had properly submitted plaintiff's "enemies" list, then, there is no reasonable basis to think that the assault would not have occurred.

Furthermore, plaintiff himself describes Macready's alleged omission as an "error in judgment," which is not enough to give rise to an Eighth Amendment claim. *See Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("To meet the subjective element [of an Eighth Amendment claim], the plaintiff must show that the defendant acted with 'more than mere negligence'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)); *Crow v. Montgomery*, 403 F.3d 598, 602-03 (8th Cir. 2005) ("negligence cannot give rise to an Eighth Amendment

---

[3] Plaintiff states that "[t]here was an inmate by the name of Brink" who plaintiff thought "had something to do with this assault," Amended Complaint ¶ 33, but he does not say that Brink committed the assault. All he alleges is that Brink "was part of the gang that was behind this assault." *Id.* He does not state that Brink was one of his listed "enemies."

failure-to-protect claim"); *Porter v. Goord*, No. 04-CV-0485, 2009 WL 2180580, at *13 (W.D.N.Y. July 22, 2009) ("In the context of an alleged Eighth Amendment failure to protect claim, 'mere negligence will not give rise to a constitutional violation'") (quoting *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991)).

Superintendent Artus is named as a defendant in the fifth claim, and D.S.S. Saj is named in the fourth and fifth claims. Plaintiff's claims against both Artus and Saj must be dismissed for lack of personal involvement.

It is well established that imposing individual liability under § 1983 requires "personal involvement ... in alleged constitutional deprivations." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004)(internal quotation marks omitted). Personal involvement may be shown where the defendant directly participated in the violation, or, if the defendant was a supervisory employee or official, where the defendant: failed to remedy the violation after it was brought to his or her attention; created or fostered a policy or custom that allowed or caused such violations to occur; was grossly negligent in supervising subordinates who committed the violation; or showed deliberate indifference to the rights of others by failing to act on information that constitutional violations were occurring. *Crenshaw v. Korbar*, No. 09-CV-6167, 2013 WL 1681833, at *4 (W.D.N.Y. Apr. 17, 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

Plaintiff has not alleged facts showing Artus's or Saj's personal involvement. Aside from being named as a defendant, Artus is not even mentioned in plaintiff's fifth claim. The same is true of Saj, except for plaintiff's allegation that Saj "forced" plaintiff "to sign into Protective Custody against Robert Mills ... ." Plaintiff alleges that Saj told him that if he did not sign, he

13

would be sentenced to six months in the Special Housing Unit. Plaintiff alleges that he "[r]eluctantly" signed and was "released after they moved Robert Mills." Amended Complaint ¶ 43.

All that shows is that Saj took steps to protect plaintiff. That hardly shows a culpable state of mind on Saj's part. *See Farmer*, 511 U.S. at 834 (to establish a constitutional violation for failure to protect, an inmate must show that the conditions of his incarceration posed a substantial risk of serious harm and that prison officials were deliberately indifferent to his safety). Apparently, plaintiff believes that the correct response to the threat would have been to move Mills, rather than to put plaintiff into protective custody. But that disagreement notwithstanding, it is plain that Saj was not deliberately indifferent to a threat to plaintiff's safety.

Plaintiff's sixth claim names two defendants, doctors Fries and McPhillips. Plaintiff alleges that he did not see Dr. Fries "for almost one month after the assault." Amended Complaint ¶ 49. He alleges that in October 2014 he was transferred to Hale Creek Correctional Facility, where he was seen by Dr. McPhillips. He alleges that their treatment was inadequate. The purported basis for the claim against them is "Medical Malpractice and Medical Negligence." *Id.*

This claim is deficient on its face. To demonstrate that a lack of, or inadequate, medical treatment constituted "cruel and unusual punishment" prohibited by the Eighth Amendment, a prisoner plaintiff must show that the defendant's actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard comprisess two elements. The first element is objective, and measures the severity of the alleged deprivation, while the second element is subjective and

requires the prison official to have acted with a "sufficiently culpable state of mind." *Id.* at 104. *See, e.g.*, *Lawrence v. Evans*, 136 F.Supp.3d 486, 489 (W.D.N.Y. 2015).

All that plaintiff alleges is that there was some delay in his being seen by a doctor, and that when he was seen by doctors Fries and McPhillips, he was dissatisfied with the treatment he received. That is not enough to support an Eighth Amendment claim. *See Lawrence v. Evans*, 136 F.Supp.3d 486, 490 (W.D.N.Y.), *aff'd*, 669 Fed.Appx. (2d Cir. 2016); *Lee v. Frederick*, 519 F.Supp.2d 320, 328 (W.D.N.Y. 2007).

The sole remaining named state defendant is Gregory Brewer, who is identified in the fourth claim as a civilian maintenance supervisor. Plaintiff alleges that he told Brewer about the impending assault, about ninety minutes before it occurred.

From plaintiff's own allegations, however, it appears that Brewer did take steps to protect plaintiff. According to the complaint, after the assault occurred, and plaintiff had struggled to his feet, he was escorted out of the mess hall by a female correction officer. He states,

> On the way out the door, I requested that Mr. Brewer be contacted, as he was aware that this was going to take place. Her response was that you were the one he was talking about. This shows that Mr. Brewer did contact a Sargent and informed him and the Corrections Officers but nothing was done in time to prevent this assault. This assault was reasonably foreseeable, but not stopped by any of the officers or Sargent's.

Amended Complaint ¶ 31.

If there was some culpable failure to protect plaintiff, then, the fault cannot be laid at Brewer's feet. Plaintiff himself has alleged that Brewer–who was a civilian maintenance supervisor, not a correction officer–evidently did pass on word of the threat, and that it was not acted on. There is no basis for a claim against Brewer.

That disposes of all the named defendants. Plaintiff has also asserted claims against nine unnamed, "John Doe" defendants. Plaintiff's fifth claim is brought against "John Does (1-7)," identified only as correction officers at Livingston, and against "John Doe (8 & 9)," identified as sergeants at Livingston. The precise nature of this verbose claim is unclear, but in general it relates to defendants' failure to keep plaintiff safe from Robert Mills and other "enemies" of plaintiff.

This claim fails. Plaintiff alleges only that at certain times, he was placed in fear for his safety, but he does not allege that he suffered actual harm as a result. He requests this Court to issue orders of protection against certain individuals, but "it is far from clear that federal courts have the authority to issue orders of protection." *Newman v. Hoyt*, No. 3:17-CV-0808, 2017 WL 479844, at *4 n.4 (N.D.N.Y. Sept. 19, 2017) (citing *Kanhoye v. Atlanta, Inc.*, No. 05-CV-4308, 2000 WL 35605091, at *2 (E.D.N.Y. Dec. 3, 2000) (denying defendants' motion for an order of protection because they had failed to cite any legal basis for the requested relief).

Even construing the fifth claim as a request for injunctive relief against state officials, which might be within the general power of this Court to grant, plaintiff has not alleged facts showing a basis for such relief. As stated, plaintiff is no longer in the custody of DOCCS. There is thus no basis to believe that such relief is warranted, within the context of this lawsuit. If plaintiff believes that he needs an order of protection concerning the individuals in question, he can seek such relief in the state courts.

In his fourth claim, plaintiff alleges that at the time of the assault in the mess hall, there were several correction officers on duty in the immediate area, and that they did not intervene to

16

prevent or stop the attack. Amended Complaint ¶ 31. But he has not named those officers, apparently because he does not know their names.

Under some circumstances, a plaintiff's failure immediately to identify individual defendants by name might not, in itself, be cause to dismiss a claim. That is why litigants are permitted to pursue claims, at least for a while, against "John Doe" defendants.

But as stated, plaintiff has not even responded to the motion to dismiss, despite being given clear warning that his failure to respond could result in the dismissal of his complaint. His deadline to respond came and went over two months ago. In short, he appears to have no interest in pursuing this action.

Under those circumstances, I see no reason to allow this case to continue. It would be pointless to keep this case open, against unnamed defendants, when plaintiff himself has shown no inclination to prosecute the case. Plaintiff's claims against the John Doe defendants are therefore dismissed as well. *See Hidalgo v. Gilbert*, No. 10-CV-6522, 2012 WL 473462, at *1 n.1 (W.D.N.Y. Feb. 13, 2012) (dismissing claims against John Doe defendants where plaintiff failed to respond to motion to dismiss).

## CONCLUSION

The motions to dismiss filed by defendants Brooks Baker, Philip Roche, Eric Tyner and Donald Lewis (Dkt. #17), by defendants Eric Hurd and John Karasiewicz (Dkt. #23), and by

defendants Michelle Artus, Gregory Brewer, Marcia Fries, Eric M. Hurd, John Karasiewicz, J. McPhillips, J. McReady, and Gregory Saj (Dkt. #26) are granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
October 1, 2018.